RECEIVED
APR 1 9 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| TERRAL RIVERSERVICE, INC. | CIVIL ACTION NO. 11-888 |
| VERSUS | JUDGE TRIMBLE |
| TARGET CONSTRUCTION, INC. and WESTERN SURETY COMPANY | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment by plaintiff, Terral Riverservice, Inc. ("Terral"), seeking judgment in its favor as to all claims against defendants Target Construction, Inc. ("Target") and Western Surety Company ("Western"). For the reasons expressed herein, the court finds that Terral's instant motion should be GRANTED in full.

I.   RELEVANT FACTS

This suit arises out of a Ouachita River project under the direction of the U.S. Army Corps of Engineers ("USACE").[1] Target was awarded a portion of the work on this project and, for that purpose, contracted with Terral to purchase approximately 62,000 tons of 1,200 pound limestone rip rap ("rip rap") to be placed on the riverbank. Target secured a Miller Act Payment Bond from Western in favor of USACE, guaranteeing payment to its subcontractors, including Terral. Terral, in turn, contracted with its supplier, LaFarge Aggregates ("LaFarge"), to produce the stone and load it onto barges arranged for by Target. The rip rap was then shipped to the Ouachita River jobsite in five separate barge loads.

---

[1] Described in the record as Project No. W912EE-10-C-0028.

Terral filed the above-captioned suit in June of 2011, alleging non-payment by Target as to four (4) of the five (5) invoices for rip rap. Specifically, Terral alleges that it issued its first invoice, number S256842, on November 30, 2010 after the first set of barges left LaFarge, headed for the Target jobsite. Thereafter, four additional invoices, representing four additional sets of loaded barges, were issued: S258088 (dated January 10, 2011), S258089 (dated January 10, 2011), S258845 (dated February 4, 2011) and S259164 (dated February 14, 2011).[2] Terral asserts that, as of the date of the filing of the instant motion, Target has paid invoice number S258088 in the amount of $247,407.38 and, after the institution of the suit, an additional $150,000, leaving a balance due on open account of $622,864.57. Terral alleges in solido liability by Target and Western and asks the court for the balance due on the account plus legal interest from the date of demand.

Target and Western answered Terral's suit by general denial and further, asserted a counterclaim by Target against Terral for what it describes as Terral's "failure to perform its work timely and properly and supply sufficient material to maintain the project schedule."[3] Target prays for all direct and consequential damages caused by Terral's alleged contractual breaches, as well as interest, costs and other equitable relief.[4]

## II. APPLICABLE STANDARD

As amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[5]

---

[2] R. 26-2 at Exhibits A-4 through A-8.
[3] R. 13 at p. 7.
[4] Id. at pp. 7-8.
[5] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[6] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[7]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[8] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[9] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt" as to the material facts.[10] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[11]

III.   ANALYSIS

The evidence before the court shows that on September 28, 2010 Terral provided Target a quote for "approximately 70,000 tons" of "Limestone Rip Rap" at a price of "$10.25 per ton

---

[6] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[7] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[8] Fed. R. Civ. P. 56(c)(2).
[9] Fed. R. Civ. P. 56(c)(1).
[10] Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 477 U.S. 242 (1986).
[11] Id.

loaded on your barge @Lafarge Cave In Rock[.]"[12] The quote further specifies that the price of the rip rap is "due upon receipt of invoice[.]"

Subsequently, on or about November 3, 2010, Target submitted a purchase order for 62,000 tons of "Class B Limestone RipRap #1200 FOB Cave-In-Rock Quarry, Il."[13]

Target argues that the affidavit of Jimmy Gunter, the aggregate sales manager for Terral, refers to the rip rap in question only as "limestone rip rap" and that this description differs from the description of the rip rap as "B Stone" in the affidavit of James McRae, an engineer with USACE.[14] Target asserts that, because of the discrepancies among the various descriptions of the rip rap at issue, a genuine issue of material fact exists as to whether or not USACE has paid Target for the rip rap sold by Terral or such payment was for some other rip rap.[15]

This is, without a doubt, one of the most frivolous and disingenuous arguments ever advanced before this court. Target's own purchase order refers to the rip rap as "Class B" stone. Moreover, Jimmy Gunter's deposition testimony contains his unrefuted explanation that the term "Class B" is a standard industry term among quarries and refers specifically to 1200 pound rip rap.[16] Target's careful failure to admit or deny that it has, in fact, been paid by USACE for each of the shipments of rip rap Target purchased from Terral, especially in light of the affidavit of McRae and the attached ENG Form 93 evidencing payment,[17] is clearly dilatory conduct.

Target next argues that Terral has failed to demonstrate that no genuine issue of material fact exists as to Western's issuance of a Miller Act Payment Bond in favor of USACE, wherein it bound itself jointly and severally with Target for payment to Target's suppliers.[18] Target asserts

---

[12] R. 27-2 at Exhibit A-2.
[13] R. 27-2 at Exhibit A-3.
[14] R. 30 at pp. 3-4, referring to R. 27-2 and 27-3 (affidavits of Gunter and McRae).
[15] Id.
[16] R. 32-1 at 44:2-18.
[17] R. 27-3.
[18] R. 32 at pp. 4-5.

that the copy of the payment bond attached to Terral's motion is unsigned and unverified. Target points out that Gunter testified that he was unfamiliar with this same copy of the payment bond and did not believe it came from Terral's files.

Target's answer to this suit contains an admission that "Target procured a Miller Act bond from Western Surety regarding the project."[19] Terral responds by pointing out that the copy of the payment bond attached to its motion as Exhibit A-11 is "a printed version of a PDF copy of the bond supplied to undersigned counsel for [Terral] by Western's /sic/ [S]urety claims counsel prior to institution of this suit.[20]

The court agrees that Terral has demonstrated that no genuine issue of material fact exists concerning the issuance of a Miller Act payment bond by Western to Target in favor of USACE. The joint answer filed by Western and its admitted surety, Target, leaves no doubt that a bond was issued. As cited above, it is insufficient for Target to attempt to create "metaphysical doubt" as to the existence and/or content of the payment bond at issue. Having already admitted that such bond was issued among them, Western and Target's argument here is, again, purely dilatory.

Target next argues that genuine issues of material fact exist because of discrepancies among Gunter's deposition and the Boyt and Gunter affidavits offered in support of Terral's motion. Specifically, Target points out that the only authentic documents attached to these affidavits are the actual Terral invoices, Exhibits A-4 through A-8, and these documents refer only to "crushed limestone," which Target again attempts to distinguish from the rip rap at issue in this case. Again, we find this argument frivolous and advanced only for purposes of delay.

---

[19] R. 13 at p. 2, ¶ 5.
[20] R. 34 at pp. 4-5.

Target alleges no particular facts which would tend, if proven, to demonstrate that Target did not receive the rip rap it purchased or that it was not timely invoiced for the rip rap.

Terral's motion also requests summary judgment in its favor as to Target's counterclaim against it in this suit. Target does not answer Terral's motion as to its counterclaim and, accordingly, we deem the counterclaim abandoned by Target in this matter. Such claim will be dismissed with prejudice, Target having alleged no facts which, if proven, would demonstrate entitlement to judgment in its favor.

### III. CONCLUSION

The court has carefully reviewed the arguments and evidence advanced by the parties as to Terral's motion for summary judgment. The court finds that Terral has successfully demonstrated that it provided 77,193 tons of rip rap to Target as contemplated in Target's purchase order and subsequent addenda requesting amounts above the 62,000 initial purchase. Target's clearly frivolous and dilatory arguments before this court are insufficient to establish anything beyond "metaphysical doubt" as to the truth of the facts asserted by Terral: that a product was ordered and delivered, but not paid for. Moreover, Target does not specifically deny the truth of these facts alleges absolutely no facts of its own which might demonstrate an issue for trial.

Although the court declines to institute sanction proceedings against counsel for defendants at this time, we caution that further appearances before this court should be undertaken with particular attention to Fed. R. Civ. P. 11.

Based on our reasoning above, the court finds that Terral has demonstrated the absence of any genuine issue of material fact regarding its entitlement to payment on open account. Accordingly, Terral's motion for summary judgment will be granted and judgment shall be

issued in its favor in the amount of $662,864.57 plus legal interest from the date of judicial demand until paid, subject to a credit for $150,000 paid October 3, 3011, in solido against Target and Western and, additionally, dismissing Target's counterclaim against Terral with prejudice based on our finding of abandonment.

Alexandria, Louisiana
April  19 , 2012

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE